## COMMONWEALTH *vs.* CHARLES J. BLEVINES.

Plymouth. December 3, 2002. - January 30, 2003.

Present: MARSHALL, C.J., GREANEY, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Search and Seizure,* Search incident to lawful arrest, Automobile. *Constitutional Law,* Search and seizure. *Identification. Controlled Substances.*

The seizure by a police officer of a criminal defendant's keys was permissible under G. L. c. 276, § 1, where the officer, discovering a hard object in the defendant's rear pocket, was justified in retrieving that object (the keys) as a potential weapon; however, where the officer had no information suggesting that a vehicle that one of the keys unlocked had any connection to criminal activity, subsequent investigative use by the police of the keys, which led directly to the discovery of cocaine in the vehicle, was not permitted under G. L. c. 276, § 1. [607-611]

COMPLAINT received and sworn to in the Brockton Division of the District Court Department on September 10, 1999.

A pretrial motion to suppress evidence was heard by *James F.X. Dinneen,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Abrams,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by her to the Appeals Court. After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further review.

*Robert C. Thompson,* Assistant District Attorney, for the Commonwealth.

*Nona E. Walker,* Committee for Public Counsel Services (*Cecely A. Reardon,* Committee for Public Counsel Services, with her) for the defendant.

COWIN, J. This is an interlocutory appeal from an order of a District Court judge denying the defendant's motion to suppress evidence. A single justice of this court allowed the defendant's application for interlocutory appeal and referred the matter to the Appeals Court. The Appeals Court concluded that the mo-

tion to suppress should have been allowed. *Commonwealth* v. *Blevines*, 54 Mass. App. Ct. 89 (2002). We granted the Commonwealth's application for further appellate review and reverse the order of the District Court.[1]

1. *Background.* We summarize the factual findings of the motion judge, supplementing his findings with undisputed facts from the hearing transcript. Just after 11 P.M. on September 9, 1999, three members of the Massachusetts State police gang unit, patrolling in an unmarked car in Brockton, entered the rear parking lot of a bar that they knew to be the scene of arrests for drugs and disorderly conduct. Six to ten cars were parked in the lot at the time. When the troopers arrived, they saw two men talking near the bar's rear entrance; one of the men, the defendant, was drinking from a bottle of beer. The troopers, in plain clothes but wearing gunbelts with badges and handcuffs, left their vehicle, and the defendant placed his beer on the ground.

Trooper Brian Moore approached the defendant, and Troopers Francis Walls and Jamie Collazo approached the second man. Moore asked the defendant for his name and date of birth. The defendant answered that he was "Charlie Jackson" and that his date of birth was February 27, 1970. When Moore asked the defendant how old he was, the defendant replied that he was thirty years old. Moore concluded that the defendant had given a false name and date of birth (the given date of birth would have made the defendant twenty-nine years old), and informed the defendant that he was under arrest for drinking in public, a violation of a city ordinance. Moore testified that he pat frisked the defendant "for whatever objects he had in his pockets," and recovered from the defendant's right rear pocket a key chain with five keys. He placed the defendant in the back seat of the unmarked cruiser, closed the door, and placed the keys on the cruiser's roof. Moore ran a check using the name "Charlie Jackson," seeking outstanding warrants or any record under that name, but no matches were found. Moore then asked the second man for the defendant's name. The man said that the defendant

---

[1]When we granted further appellate review, we also requested supplemental briefing on several issues. We address those issues only to the extent necessary to resolve this appeal.

was "Benny Blevines," but a check for a record and warrants again revealed no matches. At this point, Brockton Detective Joseph Sutherland arrived at the scene.[2] After giving the defendant Miranda warnings, Moore asked the defendant how he had traveled to the bar, and the defendant responded that he had walked.

At this time, Moore "noticed" that the defendant's keys, still on the roof of the cruiser, included a set of car keys, "GM [General Motors] type . . . for like a Chevy." Moore gave the keys to Collazo and told him to "see if any of these fit any of the cars in the parking lot" in order to identify the defendant. Moore was "hoping to find a registration in the car, a wallet with an ID for him in it." Collazo approached a Chevrolet Celebrity automobile parked about fifteen feet from where the men were standing and inserted a key into the Chevrolet's trunk lock. The trunk popped up and Collazo immediately closed it. Walls made an "area search" of the car. When he looked through the front windshield with a flashlight from a position near the vehicle's inspection sticker, Walls observed a clear plastic bag containing what appeared to be crack cocaine partially under the front seat. The Appeals Court inferred that Walls's and Collazo's actions were simultaneous. *Commonwealth* v. *Blevines, supra* at 91-92 & n.6. We address the order of events, *infra.*

Using the key, the police then opened the door of the Chevrolet and retrieved the bag. The defendant was charged with possession of cocaine with intent to distribute, G. L. c. 94C, § 32A (*c*); possession of cocaine with intent to distribute within 1,000 feet of a school, G. L. c. 94C, § 32J; and drinking in public. At the police station, another officer recognized the defendant as Charles Blevines, and a computer check revealed outstanding warrants against him.

The defendant sought suppression of the keys and cocaine,[3] claiming violations of the Fourth Amendment to the United States Constitution, art. 14 of the Massachusetts Declaration of

---

[2]Detective Sutherland did not testify at the hearing. His report was entered in evidence by stipulation.

[3]The defendant also sought to suppress his statements to the police, but has not pursued this claim on appeal.

Rights, and G. L. c. 276, §§ 1-3D. In his memorandum of decision, the motion judge upheld the seizure and use of the keys as an appropriate means of ascertaining the defendant's identity, and the discovery of the cocaine as the finding of contraband in plain view. The Appeals Court's decision did not address the search for the keys, but assumed its validity for the purposes of the case. The Appeals Court then determined that the *use* of the keys was improper, thereby tainting the discovery of the cocaine and requiring that it be suppressed. *Commonwealth* v. *Blevines, supra* at 96-97. We conclude that the search and seizure of the keys was permissible under G. L. c. 276, § 1, but that their use as investigatory tools was improper, and that this impropriety tainted the discovery of the cocaine.

2. *Discussion.* This case concerns two separate issues: the seizure of the keys and their use thereafter. The Commonwealth maintains that the seizure and use of the keys were justified as a search incident to arrest. As the Appeals Court noted, "[a]s a general proposition, G. L. c. 276, § 1, is more restrictive than the Fourth Amendment . . . ." *Commonwealth* v. *Blevines, supra* at 93.[4] The statute provides, in relevant part:

> "A search conducted incident to an arrest may be made *only* for the purposes of seizing fruits, instrumentalities, contraband and other evidence of the crime for which the arrest has been made, in order to prevent its destruction or concealment; and removing any weapons that the arrestee might use to resist arrest or effect his escape. Property seized as a result of a search in violation of the provisions of this paragraph shall not be admissible in evidence in criminal proceedings." (Emphasis added).

This paragraph "authorizes a search to be made incident to an arrest only (1) for the purpose of seizing evidence of the crime for which the arrest has been made in order to prevent its destruction or concealment or (2) for the purpose of removing any weapon the person arrested might use to resist arrest or to escape." *Commonwealth* v. *Wilson,* 389 Mass. 115, 118 (1983).

---

[4] "[W]e have noted that art. 14 might provide greater protection against search and seizure than the Fourth Amendment does." *Commonwealth* v. *Clermy,* 421 Mass. 325, 329 n.2 (1995), quoting *Commonwealth* v. *Madera,* 402 Mass. 156, 160 (1988).

See *Commonwealth* v. *Toole*, 389 Mass. 159, 161-162 & n.4 (1983).

The defendant concedes that the troopers were justified in searching his person incident to arrest, but contends that they made no claim that the key might have been used as a weapon to resist arrest or to escape. We deem such a matter self-evident and conclude that Trooper Moore, discovering a hard object in the defendant's rear pocket, was justified in retrieving that object as a potential weapon. Trooper Moore's testimony that, following the arrest of the defendant, he searched the defendant for "whatever objects" were in his pockets, does not alter our conclusion. His subjective purpose in conducting the search is not relevant. Whether the search is permissible is based on an objective standard.[5] Cf. *Commonwealth* v. *Santana*, 420 Mass. 205, 208 (1995), citing *Commonwealth* v. *Petrillo*, 399 Mass. 487, 491 (1987), and quoting *Commonwealth* v. *Ceria*, 13 Mass. App. Ct. 230, 235 (1982) ("The legitimacy of an arrest for one offense ordinarily will not depend on whether the officer subjectively believed that the arrest might lead to incriminating information regarding another offense. . . . [P]olice conduct is to be judged 'under a standard of objective reasonableness without regard to the underlying intent or motivation of the officers involved' "). To the extent the search may reasonably be expected to disclose weapons, the search was proper, even if subjectively the police hoped to find other objects. Following an arrest, the police are justified in searching a defendant. A hard object found, such as keys, may be seized.

We next consider what the police could do with the keys. The keys bore no relationship to the crime of drinking in public, the offense for which the defendant was arrested; thus, the police could not seize the keys as evidence related to that offense. Because seizure of the keys was justified solely as a result of a search for "weapons," the troopers were entitled only to remove them from the defendant for safety purposes, not for purposes of investigation.

---

[5]The trooper's testimony is ambiguous. It could support a finding that he was engaged in a search for any objects without reservation or that he was seeking only items within the permissible limits of G. L. c. 276, § 1. The judge's findings do not clarify this issue. We need not resolve the matter, as the trooper's subjective intent is not relevant.

Having removed the keys from the defendant, the police need not ignore obvious aspects of, or markings on the keys. "[T]he police are not required to blind themselves to information . . . that declares its nature to anyone at sight." *Commonwealth* v. *Sullo*, 26 Mass. App. Ct. 766, 770 (1989). Cf. *Commonwealth* v. *Johnson*, 413 Mass. 598, 602-603 & n.5 (1992) (contraband found during search incident to arrest may be seized). Thus, if the police observed the "GM" logo while removing the keys from the defendant as the result of a genuinely inadvertent observation, there would be no impediment to retaining and utilizing that information. By contrast, detailed scrutiny of the keys (not evidence of the offense of drinking in public) is not permitted. Cf. *Commonwealth* v. *Vuthy Seng*, 436 Mass. 537, 551-552, cert. denied, 537 U.S. 942 (2002) (in inventory search, police may observe and utilize information that is obvious, but may not examine papers). The evidence on the record before us is vague, and the judge did not address the issue. Thus, we cannot decide here whether the officer's "notic[ing]" that the key was a "GM type" was a plain view observation, although, on appropriate evidence, a judge could so find.

Regardless of whether the information that the key was a "GM" type was properly obtained, this issue is not dispositive. In this case, investigative *use* of the keys (properly subject to seizure only as potential weapons) was not permitted. Walls was led to the Chevrolet only after Moore paid renewed attention to the keys, removed them from the cruiser roof, and directed that they be used to attempt to connect the defendant to a particular vehicle. It is this use of the keys, for an investigatory purpose unrelated to the crime for which the defendant was being arrested, that violated the statute.

Here, the police had no information suggesting that the vehicle had any connection to criminal activity, and certainly no information linking any vehicle to the sole crime for which the defendant had been arrested. Assuming that a search occurred when the police inserted the key into the lock, see *Commonwealth* v. *Alvarez*, 422 Mass. 198, 209-210 (1996), the police lacked the "founded or reasonable suspicion" they would

need to insert the key. *Id.* at 210.[6] There was no evidence that the police had any basis for suspecting that any contraband, or other evidence of criminal activity, would be found in the automobile.

Nor is the need to identify the defendant a justification. We reject the Commonwealth's argument that the police were permitted to use the keys to determine the defendant's identity. While it is true that identification "is a key element in every criminal trial," *Commonwealth* v. *Koney*, 421 Mass. 295, 302 (1995), the Commonwealth confuses identification of a defendant's true name with identification of a defendant as *the person* who committed the offense. See *Connor* v. *Commonwealth*, 363 Mass. 572, 577 (1973). See also *Turns* v. *Commonwealth*, 6 Met. 224, 235 (1843) ("The issue for the jury . . . is, not what is the individual's name, but whether the person, who has pleaded in chief, on his arraignment, is guilty of the offence charged upon him"). The defendant's identity was not the type of "evidence" encompassed by G. L. c. 276, § 1; if it were, the statutory limits on a search incident to arrest would be rendered meaningless, and the police could rifle through papers, glove compartments, briefcases, and elsewhere seeking documents identifying a suspect. The statute forbids such a roving, intrusive search for information.[7]

The Commonwealth bore the burden of proving that the unlawful use of the keys did not taint the discovery of the cocaine. *Commonwealth* v. *Fredette*, 396 Mass. 455, 459 (1985) ("The Commonwealth bears the burden of proving that evidence

---

[6]In the *Alvarez* case, where the police inserted a key into an apartment door lock, we said that "[g]iven the nature of the lock mechanism, which was accessible from a common hallway, any expectation of privacy in the contents of the lock tumbler was minimal." *Commonwealth* v. *Alvarez*, 422 Mass. 198, 210 (1996).

[7]We recognize that investigative use of keys seized from an arrested or detained suspect may be permissible as a matter of Federal constitutional law. See, e.g., *United States* v. *$109,179 in U.S. Currency*, 228 F.3d 1080, 1083, 1087-1088 (9th Cir. 2000); *United States* v. *Lyons*, 898 F.2d 210, 211-213 (1st Cir.), cert. denied, 498 U.S. 920 (1990); *United States* v. *DeBardeleben*, 740 F.2d 440, 442-445 (6th Cir.), cert. denied, 469 U.S. 1028 (1984). Here, however, the search incident to the defendant's arrest, and hence the use of keys found during that search, is subject to the constraints of G. L. c. 276, § 1.

subsequently obtained [after unlawful police conduct] is untainted"). Trooper Walls, the only officer who testified concerning who was at the car when the keys were used to "pop" the trunk, testified that he was standing *behind* Collazo when Collazo unlocked the trunk. It was only *after* the "pop of the trunk" that Walls began walking around the car shining his flashlight through the windshield. To the same effect was Detective Sutherland's written report (see note 2, *supra*). Only Trooper Moore (some fifteen feet from the vehicle) testified that Walls's and Collazo's actions occurred "pretty much simultaneously." (The judge's findings do not address the timing issue.)

On this evidence, the Commonwealth has not sustained its burden of proving that the discovery of the cocaine was untainted. Rather, the evidence showed that the improper use of the keys led directly to the discovery of the cocaine. It is true that the police, standing outside any car in that parking lot (a place in which they had a right to be, see *Commonwealth v. Sergienko*, 399 Mass. 291, 294 [1987] [valid plain view observation through windows of vehicle parked in lot open to and used by public]) could properly have shone a flashlight into such car. *Commonwealth v. Cavanaugh*, 366 Mass. 277, 281-283 (1974) (use of flashlight to look into automobile in parking lot not a search). Although the cocaine could have been discovered by proper means, here the Commonwealth presented no evidence that its discovery was not the fruit of unlawful use of the keys. See *United States v. Tookes*, 633 F.2d 712, 716 (5th Cir. 1980) (connection between illegal arrest and discovery of gun not so attenuated as to dissipate taint, even though gun found in plain view).[8] As the Appeals Court noted, "the observations [of the cocaine] were part of the entire fabric of an unconstitutional investigatory search using the keys." *Commonwealth v. Blevines, supra* at 97.

---

[8]The Commonwealth has not argued the inevitable discovery doctrine, and there is no record support for the application of that doctrine. There was no evidence that the Chevrolet automobile was subject to an inventory search, and there is no indication in the record that it was about to be towed. See *United States v. Fleming*, 31 F. Supp. 2d 3, 5-6 (D.D.C. 1998) (agents searched vehicle after defendant, presented with keys taken during search incident to arrest, indicated gun was in vehicle; inevitable discovery doctrine not applicable because inventory search not inevitable).

3. The order denying the motion to suppress is reversed. The case is remanded to the District Court for further proceedings consistent with this opinion.

*So ordered.*