NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-9

BROM+FLED II LLC & another.[1]

vs.

COLONIAL TRADING COMPANY, INC.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Colonial Trading Company, Inc. (tenant), appeals from a Superior Court judge's judgment following a jury-waived trial, ordering that the tenant pay the plaintiffs, Brom+Fled II LLC and Brahmin Realty Associates LLC (landlord), past-due rent (plus late fees and interest) and vacate the leased building in the downtown section of the city of Boston (building).  The tenant contends that (1) its nonpayment of rent was excused by the landlord's material breach, (2) the judge erred by failing to treat the tenant's affirmative defenses as counterclaims, (3) the tenant was entitled to a tenant improvement allowance offset, and (4) if not excused for

_____

[1] Brahmin Realty Associates LLC.

nonpayment of rent, the tenant was only obligated to pay unpaid rent, not additional fees associated with the nonpayment. We affirm.

Background. The landlord and the tenant entered into a ten-year commercial lease for the building on September 22, 2017. The monthly rent for the first five years was $12,500, and for the last five years was $13,750, plus "additional rent" covering real estate taxes and insurance.

On May 27, 2019, the tenant entered into a sublease with Hostel Collective (hostel subtenant) for $6,700 monthly rent. On July 2, 2019, the landlord instructed the tenant to cease using the property "for Airbnb or other residential businesses immediately," assertedly because the building was "registered with the city as a commercial property" -- not residential. Then, on September 3, 2019, the landlord sent a notice of default alleging that the tenant was in breach of multiple provisions of the lease and demanding that the hostel subtenant leave the building, at which point the tenant asked the hostel subtenant to vacate and the landlord took no further action.

In May 2020, the tenant ceased paying monthly rent. As a result of the tenant's nonpayment, the landlord served a default notice on July 30, 2020, informing the tenant that failure to pay the rent for May, June, and July 2020, within five days would constitute an event of default pursuant to the lease. The

2

tenant did not make payment, and the landlord served a second notice of default on September 3, 2020.  Ultimately, on September 25, 2020, the landlord filed an action against the tenant for breach of contract and filed an amended complaint on March 22, 2021.

Discussion.  "The interpretation of a contract is a question of law, which we review de novo."  James B. Nutter & Co. v. Estate of Murphy, 478 Mass. 664, 667 (2018).  However, "we accept the judge's findings of fact as true unless they are 'clearly erroneous.'"  Millennium Equity Holdings, LLC v. Mahlowitz, 456 Mass. 627, 636 (2010).

1.  Material breach.  "A breach of a contract is a material breach when it involves an essential and inducing feature of the contract" (quotation and citation omitted).  EventMonitor, Inc. v. Leness, 473 Mass. 540, 546 (2016).  "It is well established that a material breach by one party excuses the other party from further performance under the contract."  Ward v. American Mut. Liability Ins. Co., 15 Mass. App. Ct. 98, 100 (1983).

The tenant argues that the landlord committed a material breach of the contract when the landlord demanded that the tenant terminate the sublease, and that the breach excused the tenant from any obligation to pay rent.  However, the argument is unavailing because the landlord did not commit a breach of the lease by requiring the tenant to terminate the sublease with

3

the hostel subtenant. The tenant had not provided the landlord with evidence that it had insurance to cover the hostel subtenancy, the certificate of occupancy did not include use of the building as a hostel, and the tenant began work on the building without submitting plans to the landlord -- all violations of the lease agreement.[2] Further, even if the landlord's demand that the hostel subtenant vacate the building had been unjustified, the tenant's foregoing material breaches[3] preceded the landlord's. And, although the landlord may have later refused to consider any further subtenancies beginning with a proposed subtenant in December 2021, any blanket refusal of subtenancies began after the tenant was already in breach of its obligation to pay rent. See Ward, 15 Mass. App. Ct. at 100.

2. Tenant's affirmative defense. At trial, the tenant argued that the landlord's demand to remove the hostel subtenant was a breach that either precluded the landlord from recovering or entitled it to offset any damages. The tenant raised both of these claims as a single affirmative defense in its answer to the landlord's complaint. However, because the lease explicitly

---

[2] We note that the appellant did not submit the then-existing certificate of occupancy in the record on appeal.

[3] The tenant makes no argument that its failure to comply with the requirements related to insurance, the certificate of occupancy, and the obligation to submit plans to the landlord were not material breaches.

4

required that the rent be paid "without any set-off or deduction whatsoever," the judge held that the tenant was barred from seeking an offset. We discern no error. Balles v. Babcock Power Inc., 476 Mass. 565, 571-572 (2017) ("When contract language is unambiguous, it must be construed according to its plain meaning").

The judge also appropriately declined to reach the tenant's claim that the landlord had tortiously interfered with their subtenancy, because the tenant had not asserted a counterclaim. The defendant contends that it was error not to treat its affirmative defense as a counterclaim for tortious interference. Mass. R. Civ. P. 8 (c), 365 Mass. 749 (1974), states, in relevant part, that "[w]hen a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation." However, the tenant explicitly stated in its opening argument that: "We did not file a counterclaim, and you'll find no evidence of a counterclaim, but you'll find that we have been asking for these offsets from the beginning of the case." On the second day of trial, the tenant again stipulated that there was no counterclaim and confirmed that the offset had been raised as an affirmative defense. The judge, therefore, cannot be faulted

5

for concluding that the tenant had not mistakenly designated their counterclaim as a defense. See Mass. R. Civ. P. 8 (c).

3. The tenant improvement allowance. The lease agreement provided for a tenant improvement allowance for up to $26,250, subject to certain conditions, including that the tenant provide a written disbursement request. The tenant contends that, by virtue of the lease agreement, it was entitled to the tenant improvement allowance. We are not persuaded. The tenant improvement allowance was only available if the tenant were not in default, and the only disbursement request that appears in the record was made on December 23, 2020, long after the tenant was in default. While the tenant testified that it submitted a request prior to December 23, 2020, the judge was not required to credit this testimony particularly where, as here, there was no additional credible evidentiary support. See Millennium Equity Holdings, LLC, 456 Mass. at 636-638.

4. Damages. The judge awarded the landlord damages in the amount of $545,054.45, an amount which included unpaid rent, late fees, real estate taxes, and repair and maintenance reimbursements. The tenant contends that the damages calculation was based on an incorrect application of the lease's acceleration clause.[4] The argument is not supported by the

---

[4] The tenant's argument regarding the acceleration clause appears to be a response to an argument advanced by the landlord

6

record.  Although Section 23.1 (d) (i) of the lease contains an acceleration clause, Section 23.1 (d) (ii) alternatively allowed the landlord to collect "sums equal to the Fixed Minimum Annual Rent and Additional Rent which would have been payable by Tenant, had Tenant not committed such Event of Default and had Landlord not otherwise terminated the Lease as a result, on the dates such payments would have otherwise been due" under the lease.  The $545,054.45 damages figure reflects the tenant's total unpaid rent and fees[5] from May 2020 through December 2023, as calculated in a ledger that was entered into evidence at trial.  Each of the entries having already come due, the landlord's damages therefore reflect a calculation of damages according to Section 23.1 (d) (ii) of the lease, rather than an application of the lease's acceleration clause, which would have made the tenant liable for the entire remaining rent and fees.

---

in postjudgment motions, in which the landlord justified the application of prejudgment interest pursuant to G. L. c. 231, § 6C, beginning with the September 29, 2020 notice of default through the lease's acceleration clause.  The tenant does not appeal the application of prejudgment interest beginning from September 29, 2020, so we only address the tenant's argument related to the lease's acceleration clause.

[5] These fees include unpaid real estate taxes, late fees, insurance payments, and repair and maintenance reimbursements. All such fees fall under the lease's definition of "Additional Rent," which includes "all other payments (including but not limited to Real Estate Tax Payments, late fees, interest or other fees, charges or sums) to be made by the Tenant to the Landlord."

Because the damages do not reflect an application of the lease's acceleration clause, whether the acceleration clause could properly have accelerated the tenant's liability for fees additional to rent need not be resolved.[6]

The tenant's argument that it should be excused from paying rent for the floors that it did not occupy is also unavailing. Section 5.1 (a) of the lease states that the tenant would be responsible for the full rental amount "without any set-off or deduction whatsoever."  Further, Section 17.8 (e) of the lease makes it clear that a subtenancy of the building's upper floors had no effect on the tenant's obligations to the landlord: "Neither the Sublease nor Landlord's consent thereto shall release or discharge Tenant from any liability or obligation under the Lease, and Tenant shall remain liable and responsible for, the full performance . . . with the same force and effect as though no sublet had been made pursuant to the terms of the

_____

[6] Nevertheless, tenant's reliance on Cummings Properties, LLC v. National Communications Corp., 449 Mass. 480, 492 n.5 (2004), for the proposition that an acceleration clause cannot make a tenant in default responsible for additional financial obligations beyond rent is misplaced.  The acceleration clause in Cummings Properties, LLC only allowed the lessor to collect "the entire balance in rent," while the acceleration clause here allows the landlord to collect "the remaining total amount of Fixed Minimum Annual Rent, Additional Rent and other charges which would have been payable and due by Tenant for the remainder of the Lease."  See id. at 491 n.3.  We need not consider whether the acceleration clause constitutes a penalty and not liquidated damages.  See id. at 497.

Lease."  The tenant would have been obligated for the full rental amount even if a subtenant occupied the other floors.[7]

Judgment affirmed.

By the Court (Vuono,
  Desmond & Toone, JJ.[8]),

Clerk

Entered:  February 11, 2026.

---

[7] Given the result we reach, if for no other reason, the tenant's request for attorney's fees is denied.

[8] The panelists are listed in order of seniority.