## COMMONWEALTH *vs.* JOHN DESSOURCES.

No. 07-P-1814.

Middlesex. March 5, 2009. - May 8, 2009.

Present: GRASSO, SMITH, & TRAINOR, JJ.

*Controlled Substances. Constitutional Law,* Search and seizure. *Search and Seizure,* Search incident to lawful arrest. *Evidence,* Expert opinion, Intent, Chain of custody, Certificate of drug analysis. *Intent.*

A District Court judge correctly denied the criminal defendant's pretrial motion to suppress evidence of marijuana seized by a police officer following a patfrisk for weapons, where the officer had probable cause to arrest the defendant for drinking from an open container of beer in violation of a city ordinance; where, in conducting the patfrisk incident to the arrest, the officer was not required to cease his search for weapons immediately upon retrieving the weapon that the defendant (in response to an inquiry from the officer prior to the patfrisk) acknowledged possessing; and where G. L. c. 276, § 1, did not operate as a bar to the admission of evidence discovered in the course of a search incident to a lawful arrest other than the weapons or evidence of the crime for which the defendant was arrested. [234-237]

At the trial of a criminal complaint charging the defendant with possession of a class D substance with the intent to distribute, and with doing so in a public park zone, the judge did not err in admitting in evidence the testimony of a police detective as an expert in the manner of packaging and distribution of drugs on the streets of a particular city, where, although the detective departed from proper explanation on one occasion, his testimony, viewed in its totality, properly explained the significance of the evidence in the context of drug distribution. [237-238]

The evidence at a criminal trial was sufficient to convict the defendant of possession of sixteen individually wrapped baggies of marijuana with the intent to distribute them. [238-239]

At the trial of a criminal complaint charging the defendant with possession of a class D substance with the intent to distribute, and with doing so in a public park zone, no error arose in the admission of the drugs in question on authentication or chain of custody grounds, nor was there any error in the admission of a certificate of analysis of the drugs. [239]

COMPLAINT received and sworn to in the Cambridge Division of the District Court Department on December 18, 2006.

A pretrial motion to suppress evidence was heard by *Michele B. Hogan, J.,* and the case was tried before her.

*Kathryn Hayne Barnwell* for the defendant.

*Bethany Stevens,* Assistant District Attorney, for the Commonwealth.

GRASSO, J. On appeal from his convictions of possession of a class D substance with the intent to distribute (G. L. c. 94C, § 32C), and a public park drug zone violation (G. L. c. 94C, § 32J), the defendant maintains that his convictions should be reversed because of errors in the (1) denial of his motion to suppress evidence, (2) admission of expert testimony, (3) sufficiency of the evidence of an intent to distribute, and (4) admission of the drugs and a drug analysis certificate. We affirm.

1. *The motion to suppress evidence.* We sketch the facts found by the motion judge, with minor additions from the undisputed testimony presented at the hearing on the motion to suppress.[1] See *Commonwealth* v. *Clermy,* 421 Mass. 325, 326 (1995). We reserve discussion of the facts presented at trial for consideration in connection with the defendant's trial-related claims.

On December 15, 2006, at about 7:46 P.M., Cambridge police Detective John Boyle, who was in plain clothes and working alone, observed four individuals walk into the Cambridge Common, an area known for narcotics activity. Three of the individuals sat on a bench, and the fourth, the defendant, stood close by. From a distance of twenty to thirty yards away, Boyle observed the defendant drinking from an open container.[2] He approached to get a closer look and observed that the defendant was drinking Busch beer. He concluded that the defendant was drinking alcohol in public in violation of a city ordinance, an arrestable offense. Boyle also noticed that one of the three individuals seated on the bench had a glass marijuana pipe that was in the process of being lit and passed to one of the other individuals seated next to him.

---

[1]The motion judge heard testimony from Cambridge police Detective John Boyle, who arrested the defendant, and Officer John Cameron, who conducted the booking and the inventory search, and implicitly credited their testimony. See *Commonwealth* v. *Isaiah I.,* 448 Mass. 334, 337 (2007), *S.C.,* 450 Mass. 818 (2008).

[2]The others also appeared to be drinking from containers.

Because the defendant was standing and the others were seated, Boyle considered it safer to approach the defendant first. Before conducting a patfrisk of the defendant incident to his imminent arrest, Boyle inquired whether the defendant had any weapons on his person. The defendant told Boyle that he had a box cutter in his jacket pocket. Boyle frisked the defendant to locate the box cutter, and then continued his frisk to search for other weapons. Inside the defendant's pants pocket, Boyle felt some hard objects. He removed the objects and recognized that they were several small, tightly wrapped plastic bags of marijuana with the ends of the bags twisted up.[3] He completed his arrest of the defendant, who was then transported to the Cambridge police station for booking. At the station, Officer John Cameron conducted an inventory search of the defendant's person pursuant to the department's written inventory policy. In the course of that search, Cameron noted that the defendant was wearing multiple layers of clothing, including a pair of sweatpants and a pair of shorts beneath his pants. Inside one of the interior pockets, Cameron found six more individually wrapped baggies of marijuana.[4]

The defendant contends that all the marijuana seized by the police was the product of an unlawful search and seizure in violation of the Fourth Amendment, art. 14 of the Massachusetts Declaration of Rights, and G. L. c. 276.[5] We disagree. The judge's factual findings, which are supported by the record, establish that the discovery of marijuana on the defendant's person at the scene and at the police station complied with Federal and State constitutional requirements. Regardless of his subjective

---

[3]The bundle found in the defendant's left pants pocket proved to contain nine baggies of marijuana. Another baggie of marijuana was found in the defendant's right pants pocket.

[4]The defendant does not challenge the judge's conclusion that the six additional baggies of marijuana found in the innermost pants worn by the defendant were properly seized as part of a lawful inventory search conducted pursuant to written department policy. See *Commonwealth* v. *Vuthy Seng*, 436 Mass. 537, 551-555, cert. denied, 537 U.S. 942 (2002). His contention is that the initial stop, arrest, and search was unlawful and renders all the evidence discovered at the scene and at the police station "fruit of the poisonous tree." See *Wong Sun* v. *United States*, 371 U.S. 471, 487-488 (1963).

[5]The defendant's motion to suppress raised G. L. c. 276 generally, without delineating any section of that chapter. We construe his challenge to refer more particularly to G. L. c. 276, § 1.

motivations, Detective Boyle had probable cause to arrest the defendant for drinking from an open container of beer in the Cambridge Common in violation of a city ordinance. See *Commonwealth* v. *Blevines*, 438 Mass. 604, 605, 608 (2003) (viewed objectively, facts established probable cause to arrest for public drinking). Incident to that arrest, Boyle could search the defendant for weapons, especially given the defendant's acknowledgment that he had a box cutter on his person. See *Commonwealth* v. *Johnson*, 413 Mass. 598, 602 (1992) (where probable cause exists, search incident to arrest may precede contemporaneous formal arrest); *Commonwealth* v. *Stephens*, 451 Mass. 370, 386 (2008) (same); *Commonwealth* v. *Ilges*, 64 Mass. App. Ct. 503, 516 (2005) (where there is right to arrest there is right to search incident to that arrest).

Boyle was not required to cease his search for weapons immediately upon retrieving the box cutter, and the hard objects located inside the defendant's pocket merited further scrutiny. See *Commonwealth* v. *Clermy*, 421 Mass. at 329 (G. L. c. 276, § 1, clearly permits search for and visual examination of concealed objects that might be amenable to use as weapon); *Commonwealth* v. *Blevines*, 438 Mass. at 608 ("self-evident" that discovery of hard object in defendant's pocket justified retrieving that object as potential weapon). Upon locating and viewing the hard objects, it was immediately apparent to Boyle that the items were marijuana, a contraband substance, subject to plain view seizure. See *Commonwealth* v. *Johnson, supra* at 602-603 (contraband found during search incident to arrest may be seized by police); *Commonwealth* v. *Blevines, supra* at 609 (G. L. c. 276, § 1, is no impediment to seizure of obvious information inadvertently uncovered during search incident to arrest); *Commonwealth* v. *Sullo*, 26 Mass. App. Ct. 766, 770 (1989) (police not required to blind themselves to information that declares its nature to anyone at its sight).

Contrary to the defendant's contention, G. L. c. 276, § 1, does not operate as a bar to the admission of all evidence discovered in the course of a search incident to a lawful arrest other than weapons or evidence of the crime for which the defendant is arrested.[6] "General Laws c. 276, § 1, does not

---

[6]In pertinent part, G. L. c. 276, § 1, inserted by St. 1974, c. 508, provides: "A search conducted incident to an arrest *may be made only for the purposes*

make inadmissible any evidence seized in a search incident to an arrest that is not evidence related to the crime which justified the arrest." *Commonwealth* v. *Johnson,* 413 Mass. at 602 n.5. When making an arrest, the police may permissibly search a lawfully arrested individual for weapons or for evidence of the crime for which the individual is being arrested. Even a cursory reading of G. L. c. 276, § 1, discloses that nothing in the statute bars the admission in evidence of items so seized.

Less obvious, perhaps, is the fact that G. L. c. 276, § 1, does *not* prohibit the police from *also* seizing and using as evidence items discovered in the course of a search incident to lawful arrest that are plainly contraband or evidence of other criminality for which, objectively, the police have probable cause to arrest or search. See *Commonwealth* v. *Clermy,* 421 Mass. 325. In *Clermy,* the police officers who were arresting the defendant on motor vehicle warrants conducted a patfrisk that revealed the presence of an electronic pager, cash, and a hard object between the defendant's legs in the area of his genitals. In retrieving the hard object, the police observed "a three-inch opaque brown plastic bottle for prescription medicine, covered with a white cap." *Id.* at 327. *Clermy* concluded that the arresting officers were not required to ignore the hard object they encountered in a search for weapons and that G. L. c. 276, § 1, did not render the drugs inadmissible. Upon retrieving and viewing the hard object, together with their other observations, the police had probable cause to arrest the defendant for a narcotics violation without need to open the bottle. *Id.* at 330-331. That the police had uncovered the bottle in a search incident to the defendant's arrest for motor vehicle warrants did not render the bottle and the drugs that it contained inadmissible under the statute. *Ibid.*

*Johnson, Clermy, Blevines,* and their progeny make plain that the limitation on admissibility of evidence expressed in G. L. c. 276, § 1, does not bar the admission of *new evidence* dis-

---

*of seizing* fruits, instrumentalities, contraband and other evidence of the crime for which the arrest has been made, in order to prevent its destruction or concealment; and removing any weapons that the arrestee might use to resist arrest or effect his escape. Property seized *as a result of a search in violation of the provisions of this paragraph* shall not be admissible in evidence in criminal proceedings." (Emphases supplied.)

covered during a search incident to a lawful arrest that is made for the purposes of seizing "weapons" or "fruits, instrumentalities, contraband, and other evidence of the crime for which the arrest has been made" when that new evidence is immediately apparent as contraband or evidence of other criminality. See *Commonwealth* v. *Johnson*, 413 Mass. at 602 (statute is no bar to admission of cocaine seized during search incident to arrest for motor vehicle violation); *Commonwealth* v. *Clermy*, *supra* (statute is no bar to admission of illicit drugs discovered during weapons search incident to arrest on outstanding motor vehicle warrants). "[It is of no significance under the statute] that there is an initial arrest for a separate offense, if a new ground arises for proffering charges against a defendant in the course of a lawful search conducted in connection with the initial arrest." *Commonwealth* v. *Clermy*, *supra* at 330.

Indeed, to interpret G. L. c. 276, § 1, in the manner the defendant suggests would lead to an absurd result: contraband or evidence of unrelated criminality discovered during a search incident to a lawful arrest would be excluded, but the same evidence discovered during a patfrisk (an intrusion permitted under a less exacting standard than probable cause to arrest or search) would not. See *Commonwealth* v. *Wilson*, 441 Mass. 390, 397 (2004). Such a dissonant result could not have been intended under the statute.

2. *Expert testimony.* At trial, the Commonwealth called Detective Louis Cherubino, Jr., as an expert in the manner of packaging and distributing drugs on the streets of Cambridge. The defendant maintains that Cherubino's testimony, to which no objection was lodged on direct examination, is error requiring reversal. We disagree.

Throughout direct and cross-examination, Cherubino, whose qualifications as an expert are not in dispute, testified regarding the characteristics of street level drug dealing and explained why the evidence surrounding the defendant's possession of the marijuana was consistent with distribution and inconsistent with personal use. See *id.* at 400-401 (proper for expert to opine that evidence was consistent with intent to distribute rather than with personal use). There was no error. "A police officer who is experienced with the narcotics trade may be permitted to express an

opinion that the amount of a substance possessed by the defendant was *consistent with* an intent to distribute." *Commonwealth* v. *Delgado*, 51 Mass. App. Ct. 661, 664 (2001). See *Commonwealth* v. *Johnson*, 410 Mass. 199, 202 (1991) (expert allowed to opine regarding evidence "consistent with" intent to distribute); *Commonwealth* v. *Woods*, 419 Mass. 366, 375 n.13 (1995) (same); *Commonwealth* v. *Tanner*, 45 Mass. App. Ct. 576, 579-582 (1998) (same).

Although Cherubino departed from proper explanation on redirect examination when he stated that "this individual possessed these drugs with an intent to distribute them and not just for personal use," this isolated error does not require reversal. Viewed in its totality, Cherubino's testimony properly explained the significance of the evidence in the context of drug distribution. See *Commonwealth* v. *Wilson, supra.* Even without such a finishing flourish, the jury would have known that Cherubino believed that the defendant possessed the marijuana for distribution rather than for personal consumption. See *Commonwealth* v. *Tanner*, 45 Mass. App. Ct. at 580. Moreover, the prosecutor did not exploit the slip during his closing argument, and the judge correctly instructed the jury regarding the significance and the proper use of expert opinion testimony. See *Commonwealth* v. *Woods*, 419 Mass. at 374-376 (admission of expert opinion that drug transaction had taken place not prejudicial).

3. *Sufficiency of the evidence.* Viewed most favorably to the Commonwealth, the evidence was sufficient to establish that the defendant possessed the sixteen individually wrapped baggies of marijuana with an intent to distribute them. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). The evidence established that the Cambridge Common is an area frequented by drug dealers due to its high foot traffic. Detective Boyle observed three other individuals seated near the defendant passing a pipe commonly used to smoke marijuana. No marijuana was found on any of those three individuals. Found on the defendant, however, were sixteen individually wrapped "dime bags" of marijuana — one in his right outer pants pocket, nine in his left outer pants pocket, and six inside other pants worn beneath the defendant's outer clothing. Packaged in that manner, the marijuana had a

street value of up to $320. If not packaged in "dime bags," the same total amount of marijuana could be purchased for considerably less. The defendant carried no rolling papers, lighters, or matches as would be expected were the items for personal consumption rather than for distribution.

4. *Admission of the drugs and the certificate of analysis.* The Commonwealth introduced testimony regarding the seizure of the drugs from the defendant at the scene and at booking, and the procedures for submitting the drugs for testing. Detective Boyle also testified that the drugs introduced in evidence were the drugs seized from the defendant at the scene and given to him at the police station by Officer Cameron.[7] Boyle's testimony sufficiently authenticated the drugs, and we discern no error in their admission on chain of custody grounds. See *Commonwealth* v. *Penta*, 423 Mass. 546, 556 (1996) (alleged weaknesses in chain of custody go to weight, not admissibility, of evidence); *Commonwealth* v. *Colon*, 33 Mass. App. Ct. 304, 309 (1992) (same). Nor is there error in the unchallenged admission of the certificate of drug analysis. See *Commonwealth* v. *Verde*, 444 Mass. 279, 282-285 (2005).[8]

*Judgments affirmed.*

---

[7]Cameron testified that he immediately called Boyle into the booking room and turned over to him the six additional baggies of marijuana located during the inventory search of the defendant.

[8]We note that on November 10, 2008, the United States Supreme Court heard oral argument in Melendez-Diaz *vs.* Massachusetts, No. 07-591, regarding whether admission of forensic science certificates as prima facie evidence violates the right to confrontation set forth in *Crawford* v. *Washington*, 541 U.S. 36 (2004). See *Commonwealth* v. *Melendez-Diaz*, 69 Mass. App. Ct. 1114 (2007), cert. granted, 552 U.S. 1256 (2008). Even were a decision in Melendez-Diaz *vs.* Massachusetts to establish a new rule regarding applicability of the confrontation clause to the introduction of a drug analysis certificate, we fail to discern how the defendant's appellate challenge to admission of the drug analysis certificate would require reversal where he did not contest that the substance was marijuana. His theory was that the marijuana was intended for personal use rather than for distribution.