NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-1030                                       Appeals Court


COMMONWEALTH  vs.  ADERITO BARBOSA.


No. 16-P-1030.

Suffolk.      September 8, 2017. - January 3, 2018.

Present:  Rubin, Neyman, & Henry, JJ.


Practice, Criminal, Motion to suppress.  Constitutional Law,
     Search and seizure.  Search and Seizure, Search incident to
     lawful arrest.


     Indictments found and returned in the Superior Court
Department on June 30, 2015.

     A pretrial motion to suppress evidence was heard by Kenneth
W. Salinger, J.

     An application for leave to prosecute an interlocutory
appeal was allowed by Fernande R.V. Duffly, J., in the Supreme
Judicial Court for the county of Suffolk, and the appeal was
reported by her to the Appeals Court.


     Donna Jalbert Patalano, Assistant District Attorney, for
the Commonwealth.
     Michael P. Doolin for the defendant.


     NEYMAN, J.  After an evidentiary hearing, a Superior Court

judge allowed, in part, the defendant's motion to suppress

evidence.  A single justice of the Supreme Judicial Court

allowed the Commonwealth's application for leave to file an interlocutory appeal, and reported the matter to this court. See Mass.R.Crim.P. 15(a)(2), as appearing in 422 Mass. 1501 (1996).  The sole issue is whether the judge erred in suppressing a statement made by the defendant based on limitations set forth in G. L. c. 276, § 1, and Commonwealth v. Blevines, 438 Mass. 604 (2003), regarding the use of evidence seized incident to an arrest.  We reverse.

Background.  The parties do not contest the judge's comprehensive findings of fact, which we summarize, supplemented where appropriate by the testimony from the motion hearing.[1]  See Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015).  This case stems from an investigation into the crime of trafficking of persons for sexual servitude, G. L. c. 265, § 50 (human trafficking),[2] which was prompted by an illicit online advertisement on the Web site Backpage.com (Backpage).  On May 7, 2015, as part of that investigation, Detective Ludwik Bartkiewicz, along with State and Federal law enforcement

---

[1] The judge explicitly credited the testimony of Detective Ludwik Bartkiewicz.  Accordingly, we may supplement the judge's subsidiary findings with uncontroverted and undisputed evidence from the record.  See Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015).

[2] For purposes of this appeal, we adopt the nomenclature used by the judge and the parties, who characterized the matter as an investigation into the crime of "human trafficking."

officers, went to the Park Plaza Hotel (hotel) in Boston to locate the person who had posted the advertisement on Backpage.[3] Around 10:00 A.M., the officers met the hotel's head of security on the first floor of the hotel. One of the officers, Agent Tony Freitas, telephoned the number listed in the Backpage advertisement. A woman answered and told him to come to the fifth floor via the service elevator. Agent Freitas stayed behind while the other officers followed her direction by taking the service elevator to the fifth floor. Agent Freitas then telephoned the number again. The woman told him to come to room 540. Agent Freitas relayed this information to Detective Bartkiewicz, who was among the officers on the fifth floor. The officers proceeded to room 540, knocked on the door, identified themselves as law enforcement to the woman who answered, and asked to speak with her. The woman invited them into the room. Upon learning that she was speaking with law enforcement officers, she "became very agitated." She "was visibly crying and shaking." She told the officers, "You guys can't be here. He's coming." Detective Bartkiewicz observed that the room was "sort of disheveled." He also noticed that the woman had a telephone in her hand that was continuously ringing.

---

[3] One of the officers had telephoned the number listed in the Backpage advertisement and had "made arrangements to meet the suspected prostitute at the Park Plaza Hotel" on the morning of May 7, 2015.

Agent Freitas then contacted Detective Bartkiewicz and advised that the defendant, who was the target of the investigation,[4] was heading upstairs. Detective Bartkiewicz observed the defendant and Agent Freitas step out of the elevator onto the fifth floor. Agent Freitas nodded toward the defendant "to confirm for Bartkiewicz that [the defendant] was the man Freitas had been waiting for." The defendant walked from the elevator toward room 540. After the defendant walked past him, Detective Bartkiewicz stated that he was a police officer and asked to speak with the defendant. The defendant was approximately eight to ten feet from room 540 at this time. Next, the following occurred:

> "[The defendant] stopped walking, turned toward Bartkiewicz, and said[,] 'No.' [The defendant] then started to put his right hand, the one holding the cell phone, in his pocket. So Bartkiewicz took a few steps forward, told [the defendant] to keep his hands [out of] his pocket, and put his own hand on [the defendant's] right hand, to ensure that [the defendant] kept it in sight. Bartkiewicz then reiterated, '[W]e just want to talk to you.[']

> "In response, [the defendant] said[,] 'No, I don't need to talk to you.' [The defendant] then put his hands on Bartkiewicz's shoulders, pushed Bartkiewicz out of his way, and started to run back toward the elevators. [The hotel's head of security], who was also in the hallway, blocked [the defendant's] path and pushed [him] into a door. [The defendant] fell, got back up, and ran toward the elevators. Agt. Freitas and Agt. [Peter] Darling grabbed, subdued, and

---

[4] In his findings of fact, the judge wrote: "[t]he Court infers that [the defendant] was the real target of this investigation." This finding was supported by the testimony at the evidentiary hearing.

eventually handcuffed [the defendant]. By this point [the defendant] was lying face down on the floor. The officers put [the defendant] in a sitting position.

"Det. Bartkiewicz informed [the defendant] of his <u>Miranda</u> rights. . . . Bartkiewicz patted [the defendant] down and searched his pockets. [Bartkiewicz] found and removed a hotel room key, a knife, about $500 in cash, and some prepaid credit cards from [the defendant's] pants pockets. Bartkiewicz asked [the defendant] what room the key was for. [The defendant] said it was Room 540. . . . Bartkiewicz then asked [the defendant] who was in the room. [The defendant] said that he wanted a lawyer."

The judge ruled that Detective Bartkiewicz lawfully placed the defendant under arrest for assault and battery on a police officer, properly searched him for weapons incident to that arrest, and "acted lawfully in frisking [the defendant] and removing the knife from his pocket." The judge concluded that the room key would have properly and inevitably been seized under an inventory search at booking and, thus, should not be suppressed. He further held that the defendant's statement about the room key was voluntary, and "that he made a knowing, intelligent, and voluntary waiver of his <u>Miranda</u> rights."[5]

---

[5] The judge ruled that the defendant was not seized in a constitutional sense when Detective Bartkiewicz identified himself as a police officer, said that he would like to speak to the defendant, and took a step toward him. The judge also determined that the encounter was not converted into a seizure when Detective Bartkiewicz told the defendant "not to put his hand in his pocket and emphasized that instruction by touching [the defendant's] hand." The Commonwealth suggests that a stop occurred when Detective Bartkiewicz placed his hand on the defendant's right hand, but contends that the officers had reasonable suspicion that the defendant was engaged in human trafficking. The defendant does not challenge the judge's

However, the judge, sua sponte,[6] suppressed the defendant's statement that the room key found in his pocket was for room 540.  The judge concluded that Detective Bartkiewicz "was not entitled to inspect the hotel key, cash, and credit cards as a search incident to arrest" and, in violation of G. L. c. 276, § 1, improperly used the room key "for an investigatory purpose, i.e., asking [the defendant] what room it went to."  This interlocutory appeal ensued.

Discussion.  "In reviewing a decision on a motion to suppress, 'we accept the judge's subsidiary findings of fact absent clear error "but conduct an independent review of his ultimate findings and conclusions of law."'"  Commonwealth v. Keefner, 461 Mass. 507, 515-516 (2012) (citation omitted).  "We 'make an independent determination of the correctness of the judge's application of constitutional principles.'"  Commonwealth v. Cassino, 474 Mass. 85, 88 (2016) (citation omitted).

The Commonwealth argues that the judge erred in suppressing the defendant's statement because the initial discovery of the room key attended a proper search incident to arrest for the

_____

determination of the precise moment that the stop occurred.  In either case, that determination does not affect the outcome for the reasons delineated herein.

[6] The judge noted that he "reache[d] this issue even though it was not raised by [the defendant]."

crime of assault and battery on a police officer, and the room key had immediate evidentiary significance vis-à-vis the crime of human trafficking, which the officers were then investigating. The defendant responds that the judge correctly ruled that, under Blevines, 438 Mass. at 609, the room key had no relationship to the crime for which he was arrested, i.e., assault and battery on a police officer, and thus the judge properly determined that the room key could not be used for an investigatory purpose without violating G. L. c. 276, § 1. Massachusetts law compels reversal of the suppression of the defendant's statement.

As an initial matter, G. L. c. 276, § 1, "does not operate as a bar to the admission of all evidence discovered in the course of a search incident to a lawful arrest other than weapons or evidence of the crime for which the defendant is arrested."[7] Commonwealth v. Dessources, 74 Mass. App. Ct. 232, 235 (2009). Our appellate courts have concluded that "the limitation on admissibility of evidence expressed in G. L.

---

[7] In pertinent part, G. L. c. 276, § 1, inserted by St. 1974, c. 508, provides: "A search conducted incident to an arrest may be made only for the purposes of seizing fruits, instrumentalities, contraband and other evidence of the crime for which the arrest has been made, in order to prevent its destruction or concealment; and removing any weapons that the arrestee might use to resist arrest or effect his escape. Property seized as a result of a search in violation of the provisions of this paragraph shall not be admissible in evidence in criminal proceedings."

c. 276, § 1, does not bar the admission of <u>new evidence</u> discovered during a search incident to a lawful arrest . . . when that new evidence is immediately apparent as contraband or evidence of other criminality." <u>Dessources</u>, <u>supra</u> at 236-237, citing <u>Commonwealth</u> v. <u>Johnson</u>, 413 Mass. 598, 602 (1992). See <u>Commonwealth</u> v. <u>Clermy</u>, 421 Mass. 325, 330-331 (1995).

In the present case, the parties do not dispute the judge's determination that the officers arrested the defendant for assault and battery on a police officer, and acted lawfully in frisking him. See, e.g., <u>Blevines</u>, <u>supra</u> at 608 ("Following an arrest, the police are justified in searching a defendant. A hard object found, such as keys, may be seized"). See also <u>Clermy</u>, <u>supra</u> at 327-330 (motion to suppress properly denied where officers arresting defendant on warrant conducted patfrisk that revealed electronic beeper, cash, and, subsequently, pursuant to further frisk, plastic bottle for prescription medicine located between defendant's legs). Indeed, in view of the judge's conclusion that the room key properly and inevitably would have been found and seized,[8] the defendant acknowledges that the room key "could be removed from the defendant." However, citing <u>Blevines</u>, he claims that, once it was removed,

---

[8] As noted <u>supra</u>, the judge ruled that Detective Bartkiewicz acted lawfully in frisking the defendant, but was not entitled to "inspect" the room key.

"it could absolutely not be used for investigatory purposes." This contention applies Blevines too broadly.

In Blevines, 438 Mass. at 605, the defendant was arrested for drinking in public. During a postarrest patfrisk of the defendant, a State police trooper recovered a key chain with five keys from the defendant's rear pocket. Ibid. The trooper subsequently gave the keys to a second trooper and told him to "see if any of these fit any of the cars in the parking lot" in order to identify the defendant, whom they believed had provided a false name. Id. at 605, 606. The second trooper approached a motor vehicle parked nearby and inserted a key into the trunk lock; the trunk "popped up." Id. at 606. After immediately closing the trunk, the second trooper conducted an "area search" of the motor vehicle and ultimately "observed a clear plastic bag containing what appeared to be crack cocaine partially under the front seat." Ibid. "Using the key, the police then opened the door of the Chevrolet and retrieved the bag." Ibid. The defendant was charged with various drug-related offenses. The Supreme Judicial Court held that the defendant's motion to suppress the evidence found in the motor vehicle should have been allowed because the troopers had no evidence of independent criminal activity that could justify their use of the defendant's car keys for an investigatory purpose. See id. at 610 ("There was no evidence that the police had any basis for

suspecting that any contraband, or other evidence of criminal activity, would be found in the automobile").  More specifically, "the police had no information suggesting that the vehicle had any connection to criminal activity" and "lacked the 'founded or reasonable suspicion' they would need to insert the key."  Id. at 609-610 (citation omitted).

Conversely, here, the officers had ample evidence of the defendant's involvement in the separate criminal activity of human trafficking before they arrested or frisked him.  This evidence, at a minimum, rose to the level of reasonable suspicion and, thus, justified the inquiry regarding the room key.  See Commonwealth v. DeJesus, 439 Mass. 616, 627 n.10 (2003).  Specifically, the evidence showed, inter alia, that the woman in room 540 was the person who answered the telephone at the number provided in the Backpage advertisement,[9] instructed Agent Freitas to come to the fifth floor, and told him to come to room 540; that the woman in room 540 was crying, shaking, and agitated; that she told the police that they "can't be here" because "he's coming"; that while the officers were interacting with the woman in room 540, the defendant, the target of the investigation, entered the elevator and headed to the fifth

_____

[9] The judge credited Detective Bartkiewicz's testimony that Backpage "is often used to post on-line advertisements for escorts and prostitutes."

floor; that the defendant arrived at the fifth floor and approached within eight to ten feet of room 540; and that the defendant fled when an officer tried to speak with him.  Viewed in conjunction with the judge's finding that Detective Bartkiewicz "has substantial training and experience in investigating human trafficking crimes," the room key, unlike the car key in Blevines, had immediate evidentiary significance vis-à-vis the crime of human trafficking.  The officers could reasonably have viewed the defendant as the "he" to whom the woman referenced in fear, and further viewed the room key as evidence related to the defendant's approach to room 540 and involvement as her "pimp."  The officers were "not required to blind themselves to [this] information."  Blevines, 438 Mass. at 609, quoting from Commonwealth v. Sullo, 26 Mass. App. Ct. 766, 770 (1989).  To the contrary, the totality of circumstances known to the officers demonstrated an obvious connection between the room key and the crime of human trafficking.[10]

---

[10] In addition to the officers' prearrest observations, the knife, large amount of cash, and prepaid credit cards found on the defendant bolstered the nexus between the officers' observations and the likelihood that the defendant was engaged in human trafficking.  See generally United States v. Henry, 827 F.3d 16, 27 (1st Cir.), cert. denied, 137 S. Ct. 374 (2016), and cases cited.  As discussed supra, the officers were "not required to blind themselves to [this] information."  Blevines, supra at 609, quoting from Commonwealth v. Sullo, 26 Mass. App. Ct. 766, 770 (1989).

In sum, apart from arresting the defendant for assault and battery on a police officer, the officers also had reasonable suspicion to believe that he was participating in additional criminal activity, which justified the inquiry regarding the room key.  Accordingly, the judge should not have suppressed the defendant's statement.[11]  So much of the order on the defendant's motion as suppressed his statement regarding the room key is reversed.  In all other respects, the order is affirmed.

So ordered.

_____

[11] As noted supra, the voluntariness of the defendant's statement is not at issue, as the judge determined that the defendant "made a knowing, intelligent, and voluntary waiver of his Miranda rights."