NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

18-P-1717

COMMONWEALTH

vs.

DARREN HUGHES.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Darren Hughes, was convicted following a jury trial in Middlesex County Superior Court of one count of trafficking of a person for sexual servitude, G. L. c. 265, § 50 (a), one count of distribution of a class D substance, G. L. c. 94C, § 32C (b), and one count of possession of a class D substance with intent to distribute, G. L. c. 94C, § 32C (a). In his appeal, the defendant challenges the denial of his motion to suppress, the failure to excuse two jurors for cause, the admission of various trial exhibits, the sufficiency of the evidence, and various jury instructions.  We affirm.

Background.  1.  Facts.  As we will first address the motion to suppress, we summarize the facts found by the motion judge, supplemented by uncontested testimony from the motion to suppress hearing.  Commonwealth v. Ortiz, 478 Mass. 820, 821

(2018).  Additional facts adduced at trial will be included below in the sections regarding trial errors as necessary.

In February of 2015, as part of an undercover investigation, an officer with the Massachusetts Bay Transportation Authority (MBTA) transit police, Lieutenant Detective Richard Sullivan, met with the defendant at the Woburn Mall to conduct a controlled buy of so-called "butane honey oil" (BHO), which is derived from marijuana.  The defendant sold Lieutenant Sullivan the BHO, and during the sale he asked if Lieutenant Sullivan "liked pussy."  The defendant explained that he was staying in a hotel nearby, and had "girls close by" in which the Lieutenant might be interested.  As they exited the mall, Lieutenant Sullivan signaled to officers from the Woburn Police Department to arrest the defendant for the drug offenses.

Detective Sergeant Brian McManus of the Woburn Police Department searched the defendant incident to his arrest.  The search uncovered, among other things, a hotel room key card with the logo from the Red Roof Inn.  McManus was familiar with the Red Roof Inn located near the Woburn Mall as he previously conducted investigations of prostitution there.  After learning from Lieutenant Sullivan about the defendant's statements suggesting possible prostitution, Sergeant McManus proceeded to the Red Roof Inn.

Sergeant McManus presented the key card seized from the defendant to the front desk clerk, who stated that the room associated with the key was room 216, and that the room had been rented to the defendant, Darren Hughes. When officers knocked on the door of room 216, a woman (the victim) answered and invited the officers into the room. On entering, the officers could see a digital scale with what appeared to be a small amount of BHO on it. They also found more BHO inside the refrigerator in the room.

Once the officers were inside the hotel room, the victim explained her involvement with the defendant. The victim told Sergeant McManus that she had responded to the defendant's advertisement on Backpage.com, which she showed Sergeant McManus. After meeting the defendant, the victim was thereafter employed by the defendant as a prostitute. The defendant paid for the room at the Red Roof Inn, and both the defendant and the victim stayed there.

2. Procedural history. a. Motion to suppress. In a motion to suppress, the defendant argued that the warrantless seizure of the Red Roof Inn key card was unlawful, and therefore that the key card could not be used for investigative purposes. In the alternative, the defendant argued that the victim did not have the authority to consent to the officers' search of the hotel room, and even if she did, her consent was not free and

voluntary. The defendant moved to suppress the evidence obtained in room 216 and the statements the victim made to the police officers in that room.

The motion judge denied the motion to suppress. Specifically, the judge ruled that the police discovered the hotel room key card pursuant to a lawful search incident to arrest. The court held that the seizure of the room key card and its use for further investigative purposes was permissible because of the defendant's statements to Lieutenant Sullivan suggesting that he was involved in prostitution and Sergeant McManus' experience with that particular hotel. The court also found that the victim had actual authority to consent to the warrantless search of the room. As the court found that the search was permissible and that the victim voluntarily spoke with the officers, the court denied the defendant's motion to suppress the evidence and statements obtained in room 216.

b. Jury trial. During voir dire, the defendant's trial counsel challenged two jurors for cause, juror number five (juror 5) and juror number seventy-two (juror 72). The trial judge found both to stand indifferent. The defense exercised a peremptory challenge to strike juror 5 from the jury but had exhausted its peremptory challenges before reaching juror 72, and the trial judge denied the defense's request for additional peremptory challenges. Juror 72 was then seated on the jury.

4

After the evidence was presented, the trial judge denied defense counsel's motion for a required finding of not guilty of the count of trafficking of a person for sexual servitude. The jury then deliberated, after which it delivered a verdict finding the defendant guilty of trafficking of a person for sexual servitude, distribution of a class D substance, and possession of a class D substance with intent to distribute.

Discussion. 1. Denial of motion to suppress. The defendant argues that the motion judge erred in denying the motion to suppress the evidence found in room 216 and the victim's statements therein. In reviewing a ruling on a motion to suppress evidence, we accept the judge's findings of fact absent clear error and defer to the judge's assessment of the credibility of the testimony taken at the evidentiary hearing. Commonwealth v. Scott, 440 Mass. 642, 646 (2004). We review de novo the application of constitutional principles to the facts as found. Commonwealth v. Mercado, 422 Mass. 367, 369 (1996).

a. Key card. The defendant contends that, even if the search of his person after his arrest and the discovery of the Red Roof Inn key card was lawful, the seizure and subsequent investigative use of the key card was not. Our caselaw holds that an object discovered in a search incident to a lawful arrest can be seized and used for investigatory purposes if it is related to the offense for which the defendant was arrested,

5

Commonwealth v. Blevines, 438 Mass. 604, 607-608 (2003), or if it is related to an offense in which law enforcement officers have a reasonable suspicion that the defendant is involved. Commonwealth v. Barbosa, 92 Mass. App. Ct. 587, 592 (2018). In this case, the police could reasonably have inferred from conversation with the defendant that he may have been keeping a woman or women at the nearby Red Roof Inn for the purposes of prostitution. In this case, the information known to the police thus provided reasonable suspicion that the Red Roof Inn key card was related to the crime of human trafficking. Its use for investigatory purposes thus was permissible.

b. Consent to enter room 216. The defendant also alleges that police unlawfully entered room 216, leading to the discovery of physical evidence in the room (the scale with residue of BHO and the BHO in the refrigerator) and the discovery of the victim, who then made statements to the police officers. The defendant argues that this warrantless entry was unlawful because, although the victim allowed the officers into the room, she did not have the authority to consent to the officers' entry, nor was the mere act of letting the officers into the room sufficient to constitute consent. We disagree.

Entry into a hotel room is a search for purposes of both the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights. Commonwealth v.

6

Lopez, 458 Mass. 383, 389 (2010). Because it is deemed their "home," an occupant of a hotel room has a reasonable expectation of privacy in that room, Commonwealth v. Molina, 459 Mass. 819, 825 (2011), and thus is protected from warrantless entries into the room unless there is probable cause and an exception to the warrant requirement. See Commonwealth v. Rogers, 444 Mass. 234, 236 (2005). In addition, where there is consent, there is no need for probable cause or a warrant. Lopez, supra at 391. Even if the primary occupant does not consent to a search, a third party may provide consent. This can happen if the third party has "actual authority" or "apparent authority." Actual authority is possessed not only by the property owner, but by a "third party possessing 'common authority over or other sufficient relationship to the premises or effects sought to be inspected.' United States v. Matlock, 415 U.S. 164, 171 (1974). See Commonwealth v. Porter P., 456 Mass. 254, 262 (2010), and cases cited. Common authority is 'mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.' United States v. Matlock, supra at 171 n.7." Lopez, supra at 392.

7

In this case, because the victim, despite not being listed on the room registration, was staying with the defendant in room 216, as the evidence credited by the motion judge demonstrated, she was a coinhabitant with actual authority to consent to the officers' entry into the room.

The defendant argues that the officers did not know that the victim was a coinhabitant until after they had entered the room, and so should have inquired before entry as to the victim's ability to consent. The defendant misstates the law. Diligent inquiry into the individual's authority is a requirement in cases of an individual having only apparent authority to consent. See Porter P., 456 Mass. at 271-272. But it is not required when an individual has actual authority to consent. See id. If, for example, I consent to an entry into my own house, it is not unlawful because the police only discover later that I am, in fact, the owner and resident of the house. If I had authority to consent, the consent is valid. That is the case here.

Finally, the defendant argues that even if the victim had the authority to consent to the officers' entry, she did not explicitly and voluntarily consent. To justify a warrantless search based on consent, the Commonwealth "has the burden of proving that the consent was, in fact, freely and voluntarily given" (citation omitted). Commonwealth v. Rogers, 444 Mass. at

8

237. Consent may be communicated through "words or conduct," and may also be "implicit." Id. at 237-238. "Because a finding of voluntariness is a question of fact, it should not be reversed absent clear error by the judge." Commonwealth v. Carr, 458 Mass. 295, 303 (2010).

The defendant is correct that none of the officers asked the victim to sign a consent to search form, but that is not necessary for voluntary consent. Indeed, consent has been found to be voluntarily given when an occupant of an apartment, who knew that the individuals at the door were police officers, "freely stepped aside allowing them to enter." Commonwealth v. Hill, 57 Mass. App. Ct. 240, 244 (2003). In this case, the victim knew she was speaking to police officers, as she could see their police badges and they identified themselves as police. The officers then asked for permission to enter the room, and the victim invited the officers in. The facts presented in the record show the victim's voluntary consent to the officers' entry into the hotel room. As the entry into the hotel room was lawful, that entry provides no basis for a conclusion that the evidence obtained from the room or the statements to the officers were unlawfully acquired. The defendant makes no separate argument that the victim lacked authority or failed to consent to the search of the refrigerator in the room.

2. Jury selection. The defendant claims next that his constitutional right to an impartial jury was violated when the trial judge denied his for-cause challenges to two jurors. The defendant is entitled to a trial by an impartial jury. See Commonwealth v. Williams, 481 Mass. 443, 447 (2019). This right means that if even one juror is not impartial, the convictions must be reversed. Commonwealth v. Long, 419 Mass. 798, 802, 804-805 (1995). A judge may rely on a prospective juror's representation that the juror is impartial unless there is "solid evidence of a distinct bias." Commonwealth v. Bryant, 447 Mass. 494, 500 (2006), quoting Commonwealth v. Leahy, 445 Mass. 481, 499 (2005). We review the judge's decision regarding a determination that a juror stands indifferent for abuse of discretion, and that determination "will not be disturbed except where juror prejudice is manifest." Commonwealth v. Clark, 446 Mass. 620, 629-630 (2006).

The defendant argues that the trial judge's failure to strike juror 5 for cause was error, in light of statements made by the juror during voir dire. Because the judge denied the motion to strike juror 5 for cause, the defendant exercised a peremptory strike, and she was excused.

Juror 5 indicated that she had experienced multiple assaults in the past, which resulted in at least one criminal prosecution, and that she continued to have symptoms related to

10

those experiences.  When asked if she had "an opinion as to whether the court system is fair to women who have been in some way involved in" cases of a sexual nature, the juror responded, "Historically, no, they haven't."  When asked to explain, she stated, "the way the law over the years have [sic] treated women who report rape or sexual assault it's completely unfair.  I mean, they accuse the victim, there's victim blaming, it's the way society's set up."

The trial judge properly asked juror 5 further questions, seeking to clarify whether the juror would be able to be impartial in deciding this case.  See Clark, 446 Mass. at 630 (ambiguous response requires further questioning).  Pursuant to these questions, juror 5 stated that neither her prior experiences of assault nor her beliefs about the criminal justice system's historical treatment of sexual assault allegations would impact her ability to be fair and impartial in deciding this case.  Although the juror had implied that her answer might be different if the case involved violence, the judge found that the juror's distinction between sexual matters and violent matters rendered her indifferent as to this case, because the facts of this case did not involve any allegations of force.  The juror also stated herself that this was "not a case of violence," so she did not "think it [was] going to be a problem."

11

The judge found that she stood indifferent.  The defendant moved to strike her for cause on the basis of her assaults and her answers about the fairness of the court system.  The judge, who then engaged in further voir dire with the juror, denied the motion.

On appeal, the defendant argues that the failure to strike the juror for cause was error.  In light of his inquiry of the prospective juror, the judge's conclusion that she stood indifferent was not error, and his denial of the motion was not an abuse of discretion.

For the first time on appeal, the defendant argues that another answer of the prospective juror required she be struck for cause.  Defense counsel also asked the juror if she had "ever had any experience with an African-American person that left [her] feeling uncomfortable," and she replied, "In an assault, yes."  She had previously testified that it would make no difference to her in evaluating credibility whether a witness was white or African-American.

This statement by the juror that she was left to feel uncomfortable by an African-American man who had assaulted her requires close scrutiny.  Given the precise question asked, this statement provided no information about potential racial bias.  The question did not ask whether the "discomfort" was race-based.  Nor was she asked anything about whether the experience

12

had affected her view of African-American people generally.  She was apparently assaulted more than once, and one assault involved an African-American man.  One can be assaulted by a person of any race, and one does not automatically become racist against people of that race.  In the absence of any evidence that she drew some negative inference about African-Americans due to this incident, the judge was not required sua sponte to strike the prospective juror.

The defendant also argues that juror 72 should have been struck for cause, as she expressed a belief that a person who has been arrested is more likely than not guilty.  Once again, the trial judge intervened to clarify, informing the juror that she was not permitted to draw an inference from the fact of an arrest, and that the Commonwealth bears the burden of proving the charges beyond a reasonable doubt.  The juror then stated that she would be able to "follow the law in that regard," and that it would not be difficult for her to do so.  Because the juror indicated unequivocally that she could follow the law, the judge did not err in finding her indifferent.

When the judge did not strike juror 72 for cause, the defendant requested an additional peremptory challenge, as he did not have any more available.  While a judge "may, as a matter of discretion, allow motions for additional challenges," Commonwealth v. McCoy, 456 Mass. 838, 841 (2010), the judge was

13

not required to grant the defendant additional peremptory challenges at his request. The defendant claims that the judge denied the request because extra jurors were not being seated. Although the judge did state, in her denial of the defendant's request, that she was not seating extra jurors, a judge is not required to provide extra peremptory challenges where the defendant has not demonstrated "a concrete need for additional challenges." Id. Furthermore, "prejudice generally is shown by the use of a peremptory challenge to remove the juror who allegedly should have been excused for cause together with evidence that the defendant later was forced to accept a juror he would have challenged peremptorily but was unable to because his peremptory challenges had been exhausted." Id. at 842. As we have found that the judge was not required to strike juror 5 for cause, we see no abuse of discretion in her refusing the defendant's request for additional peremptory challenges.

3. Trial exhibits. The defendant next contends that several exhibits were improperly admitted. He claims that exhibits 1 and 20-30 were improperly authenticated; exhibits 25, 27, and 28 constituted impermissible hearsay; and exhibit 27A was never submitted to the jury. Trial counsel objected to the introduction of exhibits 1 and 30, but did not object to the authentication of exhibits 20-29. We review the defendant's preserved claims for prejudicial error to determine whether such

14

error, if any, "did not influence the jury, or had but a very slight effect" (citation omitted). Commonwealth v. Tate, 486 Mass. 663, 669 (2021). We review the defendant's unpreserved claims for a substantial risk of a miscarriage of justice. Commonwealth v. Gilman, 89 Mass. App. Ct. 752, 757 n.6 (2016). We do not find any reversible error regarding the admission of the trial exhibits.

a. Authentication. "Before a communication may be admitted in evidence, the judge must make a determination regarding its authenticity; that is, the judge must determine whether there exists sufficient evidence that, if believed, a reasonable jury could find by a preponderance of the evidence that the communication in question is what it is purported to be." Commonwealth v. Lopez, 485 Mass. 471, 477 (2020). The judge does not determine that the evidence is what it is claimed to be, but rather only determines whether there is sufficient evidence to support a finding by the trier of fact that the evidence is what is claimed.

The defendant challenges the authentication of exhibits 1 and 20-30, arguing that the Commonwealth did not present a certification or keeper of the records affidavit, or offer the testimony of anyone with personal knowledge as to the creation of the records. Regarding exhibit 1, the victim testified that it was the advertisement to which she responded and through

15

which she met the defendant, and Sergeant McManus testified that it was an advertisement from Backpage.com that he saw while in the hotel room with the victim. We find that the victim's and Sergeant McManus' testimony were sufficient to support a finding by a preponderance of the evidence that exhibit 1 was in fact a Backpage.com advertisement posted by the defendant to which the victim responded. Exhibits 20-30 all came from the defendant's phone or phone company, and Sergeant McManus testified to how each was obtained and how they related to the defendant's phone. We find that a jury could reasonably have believed his testimony that the phone records were taken from the defendant's phone and phone company. In any event, there was certainly not a substantial risk of a miscarriage of justice from their admission.

b. Hearsay. The defendant argues that exhibits 25, 27, and 28 constituted inadmissible hearsay. Exhibit 25 contains a text message log from the defendant's phone, which includes text messages sent between the defendant's phone and a phone number that the victim testified was hers. The text message log itself is a computer-generated record from the extraction of the defendant's cell phone and is therefore not hearsay. Commonwealth v. Woollam, 478 Mass. 493, 498 (2017), cert. denied, 138 S. Ct. 1579 (2018) ("call logs constitute computer-generated records . . . which are generated solely by electrical

16

or mechanical operation of computer," and so "do not contain a statement from a person, and therefore, . . . do not raise hearsay concerns"). The messages contained in the log that were sent from the defendant's phone were properly admitted as admissions of a party opponent, but the defendant objected at trial to the admission of the messages purportedly sent by the victim. The Commonwealth argued, and the trial judge concluded, that the messages were not presented for the truth of the matter asserted. Rather, the Commonwealth stated that the messages were presented merely to show that the victim and the defendant communicated in a way consistent with her testimony, as the victim had testified that when she was in the hotel room with a customer, the defendant would wait outside the room and communicate with her through text messages. The trial judge did redact certain messages, the hearsay content of which she determined the jury would not be able to ignore, and she offered to provide a limiting instruction. We agree with the trial judge's ruling that the messages from the victim that were admitted as evidence were not hearsay as they were not offered to prove the truth of the matter asserted. Additionally, the messages were important to provide context to the messages sent from the defendant's phone. Commonwealth v. Kozubal, 488 Mass. 575, 585 (2021) (text messages from defendant admissible as statements of party opponent; text messages from victim

17

admissible "to provide important context for the defendant's text messages").

The defendant also challenges the admission of exhibits 27 and 28, which consist, respectively, of a message sent through the "Kik Messenger" cell phone application, purportedly sent from the defendant's phone, and an image attached to that message. The defendant argues that Sergeant McManus was not qualified to opine as to whether they were in fact sent from the defendant's phone, so they are hearsay. Sergeant McManus testified that, when data was downloaded from the defendant's phone, he was able to view what accounts were associated with the applications on the phone. He testified that the message shown in exhibit 27 was obtained from the defendant's phone, and that exhibit 27A shows that the message was sent from the Kik username associated with the defendant's phone. We do not find that the trial judge abused her discretion in finding that the message and attached photograph were sent by the defendant, and therefore not hearsay.

c. Failure to submit. The defendant next notes that although Sergeant McManus testified regarding exhibit 27A, the exhibit itself was never actually submitted to the jury. The defendant moved for a mistrial when this was discovered, which the trial judge denied, stating that "Exhibit 27A was merely corroborative of testimony that was introduced through the

18

witness directly," and pointing out that exhibit 27A was not exculpatory.  We agree with the trial judge's conclusion. Sergeant McManus testified accurately regarding the contents of exhibit 27A, which showed that the Kik message from exhibit 27 was sent from the Kik username associated with the defendant's phone, consistent with the user account information from exhibit 26.  The defendant argues that because exhibit 27A was never submitted, the jury had to accept Sergeant McManus' testimony. Assuming that is true, however, because exhibit 27A would have revealed that Sergeant McManus' testimony was accurate as to its contents, any error in failing to submit the exhibit was harmless.

4.  Sufficiency of the evidence.  The defendant argues that the evidence presented by the Commonwealth was insufficient to support the jury's verdict convicting him of the drug offenses and the trafficking offense.  In reviewing a sufficiency of the evidence claim, we must view the evidence in the light most favorable to the Commonwealth and consider whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).  We find that a trier of fact could have found the defendant guilty of all three offenses.

a.  Drug offenses.  The defendant was found guilty of distribution of a class D substance and possession of a class D

substance with intent to distribute. The defendant argues that for a conviction of those offenses to be permissible, the Commonwealth was required to show what the substances specifically were, in this case, BHO. However, there is no statute criminalizing possession or distribution of "butane honey oil"; rather, G. L. c. 94C, § 31, includes marijuana and substances containing marijuana within the category of class D controlled substances. According to the testimony of a forensic scientist with the Massachusetts State Police Crime Laboratory, the substance the defendant sold to Lieutenant Sullivan and the substance found in the refrigerator in room 216 at the Red Roof Inn both contained the resin of marijuana, which is a class D substance.[1] Based on this evidence, viewed in the light most favorable to the Commonwealth, we find that the evidence was sufficient for a rational trier of fact to find that the defendant possessed and distributed a class D substance.

The defendant also argues that, because the defendant possessed and distributed BHO, not "typically possessed marijuana plant buds," he could not properly be convicted of possession and distribution of a class D substance, as BHO

---

[1] The transcript from the trial shows that the forensic scientist testified that the resin of marijuana is a "class B controlled substance." However, the Commonwealth submitted, and the defendant assented to, a motion to correct the transcript, as the recording of the trial reflected that the testimony actually referred to class D, not class B.

20

contains tetrahydrocannabinol (THC), which is a class C substance. G. L. c. 94C, § 31. According to the forensic scientist's testimony, both of the substances were a resin of marijuana, and THC was present in both. General Laws c. 94C, § 1, defines "tetrahydrocannabinol" to include marijuana with a concentration of delta-9 tetrahydrocannabinol of more than two and one-half percent. As such, it is possible for a controlled substance to fall into both class C and class D categories. See Hensley v. Attorney Gen., 474 Mass. 651, 662 (2017). For that reason, the defendant's argument that BHO is a class C, but not class D, substance is unavailing.

b. Trafficking of a person for sexual servitude. The defendant argues that he could not properly be convicted of trafficking of a person for sexual servitude because, according to him, the only properly-admitted evidence was the victim's testimony, which was given pursuant to a grant of immunity and thus required corroboration. G. L. c. 233, § 20I. At trial, the victim testified that she had responded to an advertisement on Backpage.com, through which she scheduled a meeting with a person who turned out to be the defendant. The victim's understanding was that she would work for the defendant and go on "dates" with customers. The defendant brought her to the Red Roof Inn, paid for a room, and, once in the room, took photographs of her body. The defendant then posted the

21

photographs on Backpage.com as an advertisement.  The victim stayed at the hotel for several nights, during which time she had sexual intercourse with at least four customers.  When the victim was in the room with a customer, the defendant would wait outside the room, communicating with her through text messages. After a customer paid her and left, the victim gave the money to the defendant.

As discussed above, the exhibits challenged by the defendant were properly admitted, so the victim's testimony was properly corroborated, and therefore there was sufficient evidence to convict him of the trafficking offense.

5. Jury instructions.  The defendant challenges several of the jury instructions.  However, the defendant's trial counsel did not timely object to any of the instructions now challenged, so we review for a substantial risk of a miscarriage of justice, Commonwealth v. Kelly, 470 Mass. 682, 697 (2015), which we do not find.

a. Drug offenses.  First, the defendant challenges the judge's instruction that, in determining the element of intent to distribute, the jury should consider several factors, including what the defendant's financial resources were.  We do not find that this jury instruction resulted in a substantial risk of a miscarriage of justice where the factor was included in a list of several other factors and there was strong evidence

22

the defendant had also distributed the substance to an undercover police officer.

Second, the defendant contends that the judge erred in not instructing the jury that the Commonwealth was required to prove beyond a reasonable doubt that the substances found were BHO. As discussed above, there is no such requirement, as the Commonwealth had only to prove that the substances found were class D substances.  See G. L. c. 94C, §§ 31, 32C.

Third, the defendant claims that the judge erred in instructing the jury that, as a matter of law, the category of class D substances includes any substance that contains marijuana because, according to the defendant, BHO is not a class D substance.  As discussed above, the Commonwealth presented testimony that the substances seized from the defendant were resin of marijuana, which falls within the class D category.  G. L. c. 94C, § 31.

Fourth, the defendant argues that the judge should have instructed the jury about another statute which prohibits prosecution or punishment for the transfer of less than one ounce of marijuana to a person over the age of twenty-one, as long as the transfer was not for remuneration and was not advertised to the public.  G. L. c. 94G, § 7 (a) (4).  The defendant did not request any such instruction, and as all the evidence in this case indicates that this was not a

noncommercial and unadvertised transfer of marijuana, we see no substantial risk of a miscarriage of justice in the failure to give any instruction regarding this statute.

b. <u>Trafficking of a person for sexual servitude</u>. The defendant next challenges the judge's instruction regarding the elements of the trafficking offense, arguing that the judge did not clearly convey that the jury would have to find that the victim actually engaged in commercial sexual activity in order to find the defendant guilty. The defendant is correct that, to find someone guilty of the offense of trafficking of a person for sexual servitude, the Commonwealth must prove that "a defendant (1) knowingly (2) 'enabled or caused,' by one of the statutorily enumerated means, (3) another person (4) to engage in commercial sexual activity." <u>Commonwealth</u> v. <u>Fan</u>, 490 Mass. 433, 448 (2022), citing <u>Commonwealth</u> v. <u>McGhee</u>, 472 Mass. 405, 418 (2015). While the judge's instruction[2] could be interpreted to mean that the defendant could be found guilty even if the victim did not engage in commercial sexual activity, it could

---

[2] The judge instructed the jury as follows: "In order to prove the defendant guilty of this offense, the Commonwealth must prove . . . beyond a reasonable doubt . . . that the defendant subjected, recruited, enticed, harbored, transported, provided or obtained by any means another person -- in this case, [the victim] -- to engage in commercial sexual activity, or that the defendant benefitted financially or by receiving anything of value as a result of said activity, and that the defendant did so knowingly."

24

also be interpreted to mean, correctly, that the victim must have actually engaged in commercial sexual activity in order for the defendant to be found guilty.  Given the evidence submitted to the jury, we do not find that there exists a substantial risk of miscarriage of justice that the jury misinterpreted this one facet of the jury instructions (the risk that the defendant was convicted for "subject[ing], recruit[ing], entic[ing], harbor[ing], transport[ing], provid[ing] or obtain[ing] by any means [the victim] to engage in commercial sexual activity," which then never took place).

The defendant's final challenge relates to evidence admitted as business records.  To the extent that any of the admissible hearsay was admitted under the business records exception, the defendant argues that, where such evidence is the sole basis for a conviction, that evidence must be found by the jury beyond a reasonable doubt to be within the business records exception rather than, as the jury were instructed without objection, by a preponderance of the evidence.  Since there is, of course, a great deal of additional evidence supporting the

defendant's convictions, on its merits, this argument is insubstantial.

Judgments affirmed.

By the Court (Rubin, Neyman &
  Walsh, JJ.[3]),

_Joseph F. Stanton_

Clerk

Entered:  December 22, 2023.

---

[3] The panelists are listed in order of seniority.